**SIGNED this 13 day of August, 2019.**



*Austin E. Carter*
**Austin E. Carter**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-51682-AEC |
| Debra Ann Osborne | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Khalliah Monique Shaw, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 17-05057 |
| Debra Ann Osborne, | ) | |
| Defendant/Debtor. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Defendant's *Motion for Summary Judgment* (Doc. 17), seeking a determination that Plaintiff's claim is dischargeable, and does not fall within the ambit of either 11 U.S.C. § 523(a)(6) or (a)(2)(A), as alleged by Plaintiff. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

Pursuant to Federal of Civil Procedure ("Rule") 56(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056, the Court states on the record its reasons for this ruling on the Motion.

Having considered the respective pleadings of the parties[1], the affidavits submitted, and the remainder of the record in this case, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion.

## I.    Factual Background

Plaintiff Khalliah Monique Shaw ("Plaintiff" or "Shaw") filed this adversary proceeding to determine dischargeability of debt under 11 U.S.C. § 523(a)(6) and (a)(2)(A).[2] The alleged debt in question is a claim originally asserted in a state court medical malpractice lawsuit in which the Debtor, Debra Ann Osborne (the "Debtor" or "Dr. Osborne"), is a named defendant.

After filing and dismissing a lawsuit in state court, Plaintiff filed a second action in the same court (the "State Court Action") in 2017, asserting negligence and medical malpractice in connection with the provision of medical services at River Edge Behavioral Health Center ("River Edge") (Doc. 1, Ex. A). The Debtor is one of several defendants named in the State Court Action, based on her supervisory role as a Medical Director, as well as supervising doctor and delegating physician at River Edge (Doc. 1, Ex. A).[3] Plaintiff in the State Court Action alleges four (4) counts: (1) negligence and malpractice, (2) breach of contract, (3) negligence per se, (4) attorneys' fees, expenses, and punitive damages (Doc. 1, Ex. A).

Plaintiff's injury for which the State Court Action seeks redress arose from a medication prescription written by Julie Sanders ("Sanders"), a nurse practitioner employed at a River Edge facility in Milledgeville, Georgia. (*See* Doc. 1). The

---

[1]    Included in the pleadings considered is *Plaintiff's Sur-Reply Opposing Summary Judgment* (Doc. 27). Plaintiff filed a Motion requesting that the Court allow the filing of the Sur-Reply (Doc. 25). The Court's local rules do not preclude a party's filing of a Sur-Reply, but they do not explicitly allow such a filing either. To avoid confusion, the Court advises that it considers Plaintiff's Motion granted.

[2]    Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" or the "Code" refer to Title 11 of the United States Code.

[3]    Other defendants named in the State Court Action include River Edge, pharmacist Linda Smith, Affordable Business Solutions, LLC, DAJO, Inc., and John Does (Doc. 1, Ex. A).

prescription at the center of the controversy, lamotrigine, is used to treat epilepsy and bipolar disorder.  It carries a "black box" warning, indicating that an adverse reaction may lead to death or serious injury.  A "black box" warning is the most serious warning required by the Food and Drug Administration.  A known adverse effect of lamotrigine is Stevens-Johnson Syndrome.

Sanders prescribed lamotrigine to Plaintiff in phases of escalating dosage over the course of several weeks.  The Debtor acknowledges that the dosage exceeded the manufacturer's warning.  After several weeks of taking the lamotrigine as prescribed, Plaintiff developed serious complications and was subsequently hospitalized and diagnosed with Stevens-Johnson Syndrome and toxic epidermal necrolysis (Doc. 1, Ex. A; Doc. 17).

At the time Plaintiff was treated by Sanders, the Debtor was the Medical Director of River Edge and physically worked at the River Edge facility in Macon, Georgia. (*See* Doc. 23 ¶ 9).  As a Medical Director, the Debtor held a number of responsibilities, including supervising up to ten physicians and four nurse practitioners, including Sanders.  The Debtor served as the delegating physician for Sanders under the River Edge Nurse Protocol Agreement ("Protocol Agreement"), which Agreement authorized Sanders to prescribe medication  (*See* Doc. 1. Ex. B and C; Doc. 6 ¶ 5).  The Protocol Agreement lists the Debtor as the delegating physician and Foster Brin ("Dr. Brin") as the "Other Designated Physician." (Doc. 1, Ex. C).

Plaintiff paid for her treatment at River Edge. (Doc. 20, ¶ 29).

Although River Edge and the Debtor apparently dispute whose responsibility it was to procure medical malpractice insurance for the Debtor, there is no malpractice coverage available for Plaintiff's claim against the Debtor. (Doc. 15).

The Debtor filed her bankruptcy petition with this Court in August 2017. Plaintiff subsequently filed her Complaint initiating this proceeding, in which she

alleges that her debt should be found non-dischargeable because it arose from the Debtor's willful and malicious injury and the fraudulent representations made by the Debtor and Sanders as her agent.  Plaintiff has not requested that this Court liquidate her claim, nor has she requested relief from the automatic stay of § 362 to continue to the State Court Action so as to liquidate the claim, although the stay has now terminated under § 362(c)(2)(C) due to entry of the Debtor's discharge.

The allegations Plaintiff makes in her Complaint go beyond those included in the State Court Action.  As in the State Court Action, Plaintiff alleges that the Debtor, in her capacity as medical director, supervising doctor, and delegating physician, had an obligation to provide services and oversight for the nurse practitioners, including Sanders (Doc. 1).  However, unlike in the State Court Action, Plaintiff now contends that:

(1) The Debtor is responsible for Sanders' alleged fraudulent misrepresentation, namely that Sanders introduced herself to Plaintiff as "doctor" and wrote the lamotrigine prescription as "doctor" (Doc. 1 ¶¶ 40, 41)[4];

(2) The Debtor represented—through signing the Protocol Agreement—that the Debtor would make certain that medical services (i.e., the writing of prescriptions) rendered by Sanders were "[c]ommensurate with [her] education, training, experience and competence" as well as ensure that Sanders "receive[d] pharmacology training appropriate to the delegating physician's scope of practice at least annually" (Doc. 1, Ex. C);

(3)  She relied on the Debtor's representations and that the Debtor intentionally failed to comply with the obligations and representations in the Protocol Agreement (Doc. 1 ¶¶ 42, 43);

---

[4]    Sanders testified that she generally explains to patients that her reference to "doctor" is due to her doctorate degree, and not because she is a physician. The parties dispute whether she so explained this to Plaintiff.

4

(4) The Debtor's representations to perform the duties and roles listed in both her job description and in the Protocol Agreement were representations made to both the Georgia Composite Medical Board and all patients, including but not limited to Plaintiff (Doc. 1 ¶ 10);

(5) As a direct and proximate result of the Debtor's intentional acts and fraudulent misrepresentations, she incurred severe mental and physical injuries and damages (Doc. 1 ¶ 44).

The Debtor acknowledges that the lamotrigine prescription given by Sanders was inappropriate. (Doc. 23 ¶ 11).  The Debtor testified in her Affidavits that (1) she never spoke to or treated Plaintiff and was unaware of her injuries until she received a copy of the initial medical malpractice lawsuit, and (2) until the incident with Plaintiff, the Debtor had received no information related to instances of Sanders' deficient performance, including writing inappropriate prescriptions, and was unaware that Sanders had ever represented herself as a "doctor." (Doc. 13, ¶¶ 6, 7; Doc. 24-1, ¶¶ 3, 4).

Plaintiff contends in Count I of the Complaint that Osborne's behavior constitutes willful and malicious conduct that should be nondischargeable under § 523(a)(6).  Plaintiff avers that Osborne's failure to perform the duties associated with her roles as medical director, supervising doctor, and delegating physician amounts to willful and malicious conduct.

With respect to dischargeability under § 523(a)(2)(A), Plaintiff asserts in Count II that the Debtor, by virtue of her role as medical director and delegating physician, represented that she would perform the obligations of such roles in good faith.  Further, Plaintiff contends she relied on these representations because had the Debtor not made such representations, Sanders would have been unable to treat patients, and more importantly would not have prescribed to Plaintiff the medicine that caused her injuries.  Plaintiff alleges that a principal-agent relationship

5

existed between the Debtor and Plaintiff and that, based on such relationship, the Debtor is responsible for Sanders' fraudulent representations.

The Debtor seeks summary judgment on the grounds that Plaintiff cannot establish the elements necessary to establish nondischargeability under either § 523(a)(6) or 523(a)(2)(A). The Debtor denies that she willfully or maliciously harmed Plaintiff or that she made any fraudulent or other misrepresentations to Plaintiff, and argues that Plaintiff's claims against her are more appropriately considered medical negligence or recklessness claims.

## II.   Legal Analysis.

Under Rule 56, a party moving for summary judgment is entitled to prevail on its motion if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law as to such claims, defenses, or parts thereof. Fed. R. Civ. P. 56(a). The movant bears the initial burden to show from the record the absence of a genuine dispute as to material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met her burden, the burden shifts to the nonmovant to point to specific parts of the record that demonstrate a genuine dispute as to facts material to the claim, defense, or part thereof, at issue. *Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013).

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment remains appropriate when "it is clear that there is no evidence in the record which can support the complaint . . . ." *Peoples State Bank v. Drenckhahn (In re Drenckhahn)*, 77 B.R. 697, 712 n.16 (Bankr. D. Minn. 1987) (citation omitted). Nevertheless, a court has discretion "to deny even a well-supported motion for summary judgment, if it believes the case

6

would benefit from a full hearing." *U.S. v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991); *see also Liberty Lobby*, 477 U.S. at 255.

Credibility determinations are to be reserved for trial. *Liberty Lobby*, 477 U.S. at 255. "Issues of intent are especially susceptible to this restriction"; accordingly, where the Court's ruling turns on such determinations, the defendant should be given "the opportunity to . . . testify, at which time the Court [can] observe his demeanor and assess credibility." *Sims v. Morris (In re Morris)*, 185 B.R. 939, 944-45 (Bankr. N.D. Ga. 1994); *see also Bd. of Mgrs. of St. Tropez Condo. v. Proof of the Pudding, Inc. (In re Proof of the Pudding, Inc.)*, 10 B.R. 459, 461 (Bankr. S.D.N.Y. 1981).

The issue before the Court is whether the Debtor is entitled to judgment as a matter of law regarding the nondischargeability of the debt pursuant to § 523(a)(6) and 523(a)(2)(A).

Having carefully considered this matter, the Court finds that there are no genuine issues of material fact related to the § 523(a)(6) claim and that the Debtor is entitled to judgment as a matter of law as to Count I of the Complaint. However, the Court finds that genuine issues of material fact exist as to nondischargeability of the debt under § 523(a)(2)(A); therefore, summary judgment as to Count II of the Complaint must be denied.

### A.   Nature of Claims in State Court Action.

The Debtor asserts that Plaintiff's claims in the State Court Action are garden-variety professional negligence claims and that, because the claims of willful and malicious conduct and of fraudulent misrepresentation were not asserted in the State Court Action, they should now be barred. The Debtor asserts that Plaintiff recharacterized her claims under the parameters of § 523(a)(6) and (a)(2)(A) after the Debtor filed this bankruptcy case. Plaintiff responds that she learned of the

facts supporting the allegations in her Complaint only after the State Court Action
was filed, and that she was prevented from filing an amended complaint in the
State Court Action by the Debtor's filing of her bankruptcy case and the resulting
automatic stay.

The Debtor's argument is not persuasive. A party is not barred from
asserting that a debtor's conduct rises to the level of nondischargeability even
though the party did not raise that claim in the pre-petition state court action. *See
Johnson v. Keller (In re Keller)*, 106 B.R. 639, 643 (B.A.P. 9th Cir. 1989) (holding
that claimant who obtained state court malpractice judgment based on negligence
was not barred from raising issues of dischargeability in bankruptcy adversary
proceeding).

### B.     Nondischargeability Standard under § 523(a).

The discharge in bankruptcy to an honest, but unfortunate, debtor is a
bedrock of our bankruptcy system. Therefore, exceptions to discharge should be
construed "liberally in favor of the debtor." *Equitable Bank v. Miller (In re Miller)*,
39 F.3d 301, 304 (11th Cir. 1994) (citation omitted); *see also Hope v. Walker (In re
Walker)*, 48 F.3d 1161, 1164-65 (11th Cir. 1995) (court has "obligation to construe
strictly exceptions to discharge.").

A creditor must prove his claim of nondischargeability under § 523(a) by a
preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Evaluating a complaint to determine the dischargeability of a debt involves
two steps. "The first step is to determine whether a debt exists. If the debtor owes
a debt to the plaintiff, the second step is to determine the nature of the debt—
whether it is dischargeable or non-dischargeable." *Worldwide Equip. of S.C., Inc. v.
Willoughby (In re Willoughby)*, No. 16-57059, Adv. No. 16-5164, 2017 WL 3741256,
at *3 (Bankr. N.D. Ga. Aug. 30, 2017). For purposes of this Motion, the Debtor does

not contest the first element, whether a debt exists, so the Court turns its attention to whether the debt is dischargeable.

### C.    § 523(a)(6)—Willful and Malicious Injury.

Section 523(a)(6) includes two discrete elements—willfulness and maliciousness.  Even though there is no question that Plaintiff has suffered serious injury, she must show that the Debtor acted both willfully and maliciously in order to prevail on her claim.

The Eleventh Circuit has described willfulness as follows:

> We have held that proof of "willfulness" requires "'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995) (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* at 1165; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). Recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). *Kawaauhau*, 523 U.S. at 64.

*Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (citation format revised for style).

Bankruptcy courts in this State generally recognize that *Kawaauhau v. Geiger* narrowed the scope of willfulness:

> Thus, with respect to willfulness, it must be shown that a debtor "acted with the desire to cause" the resulting harm to a targeted person, acted "with knowledge that injury will occur" to such person, or acted in the belief that harm was "substantially certain to result" either through evidence of "subjective motive" regarding same or when "no other plausible inference" can otherwise be drawn from the record that the debtor had such knowledge.

9

*Atlanta Contract Glazing, Inc. v. Swofford (In re Swofford)*, No. G08-20892-REB,

Adv. No. 08-2053, 2008 WL 7842040, at *2 (Bankr. N.D. Ga. Dec. 29, 2008) (citing

*Wooley v. Wooley (In re Wooley)*, 288 B.R. 294, 302 (Bankr. S.D. Ga. 2001)).

However,

> reckless conduct that results in injury characterized by an entire
> want of care or conscious indifference to the result is not adequate
> in accordance with the legal standard set forth in this discharge
> exception. In other words, Section 523(a)(6) only applies when a
> debtor intends the injury caused by his actions. It does not cover a
> failure to meet a duty of care that leads to injury.

*Washington v. Robinson-Vinegar (In re Robinson-Vinegar)*, 561 B.R. 562, 568

(Bankr. N.D. Ga. 2016).

As for malice under § 523(a)(6), the Eleventh Circuit has opined that:

"'Malicious' means 'wrongful and without just cause or excessive even in the

absence of personal hatred, spite or ill-will.'  To establish malice, 'a showing of

specific intent to harm another is not necessary.'" *In re Jennings*, 670 F.3d at 1334

(citations omitted).  "An injury is malicious under Section 523(a)(6) when same is

determined to be 'wrongful and without just cause or excessive,' or simply a bad act

having no redeeming social value or purpose whatsoever."  *Haramis v. Mitchell (In

re Mitchell)*, No. G05-21370-REB, Adv. No. 06-2035, 2007 WL 7143084, at *4

(Bankr. N.D. Ga. July 25, 2007) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161,

1164 (11th Cir. 1995)).

Plaintiff's claim of willful and malicious injury fails on several grounds: (1)

vicarious liability cannot be used to succeed on a § 523(a)(6) claim under these facts;

(2) the record does not support Plaintiff's allegation that the Debtor inflicted a

willful injury on Plaintiff; and (3) the Debtor's conduct cannot be reasonably

characterized as anything more than recklessness, which fails to meet the standard

established by the Supreme Court.

### 1.    Vicarious Liability Not Sufficient.

Plaintiff alleges that the actions of both the Debtor and Sanders caused the willful and malicious injury to her.  Plaintiff avers that Sanders engaged in wrongful conduct when she wrote the improper dosage prescription and alleges that the Debtor is responsible for Sanders' acts and omissions under both the Protocol Agreement and Georgia agency law.  As to the Debtor, Plaintiff alleges that the Debtor inadequately trained and supervised Sanders, to whom she had delegated authority to prescribe the drug lamotrigine.

The allegations centered on Sanders' conduct fail to support a § 523(a)(6) claim against the Debtor.  Section 523(a)(6) refers to "willful and malicious injury *by the debtor* . . . ."  11 U.S.C. § 523(a)(6) (emphasis added).  Courts generally have held that "for purposes of § 523(a)(6), a spouse or other third party's actions cannot be imputed to the debtor absent evidence the debtor was personally involved in the act." *Mothershead v. Bacchus (In re Bacchus)*, No. 10-10195-JDW, Adv. No. 10-1017, 2010 WL 3909697, at *4 (Bankr. M.D. Ga. Sept. 29, 2010); *Ford Motor Credit Co. v. Moody (In re Moody)*, 277 B.R. 865, 871 (Bankr. S.D. Ga. 2001) ("Although Debtor did not willfully injure Plaintiff or its property, Debtor could be liable if [his company] did so and if Debtor was actively involved in inflicting the injury."); *see also Greer v. Bruce (In re Bruce)*, 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018) ("[T]he willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523(a)(6)."); *Loucks v. Smith (In re Smith)*, 537 B.R. 1, 15 (Bankr. M.D. Ala. 2015) ("Vicarious liability, without more, cannot form the basis for a determination that [the debtor's] conduct was 'willful' within the meaning of § 523(a)(6).").

In *Borges v. Placeres (In re Placeres)*, 578 B.R. 505 (Bankr. S.D.N.Y. 2017), the court considered an analogous factual scenario.  There, the debtor was an attorney, against whom a former client brought an action under § 523(a)(6).  The

11

basis for the claim was a judgment for legal malpractice that the former client obtained in state court before the bankruptcy case was filed.  The client-plaintiff was given improper advice by a paralegal working under the debtor's authority, and not by the debtor directly. Even though the debtor acknowledged responsibility for the erroneous advice given by his paralegal, the court held that the advice given by the paralegal could not satisfy a § 523(a)(6) claim against the debtor because the plaintiff had "failed to show that [the debtor] was personally involved in or knew of" the paralegal's bad advice to the client. *Id.* at 516-17; *see also Loucks v. Smith (In re Smith)*, 537 B.R. 1 (Bankr. M.D. Ala. 2015) (debtor's knowledge that his employees were sexually harassing plaintiffs was not sufficient to salvage § 523(a)(6) claim from dismissal for failure to allege facts that could establish willfulness).

Here, there is no indication in the record that the Debtor was actively involved in or knew of Sanders' inaccurate prescription to Plaintiff.  Indeed, the record is clear that the Debtor was unaware of Sanders' treatment of Plaintiff until after Plaintiff's injury.  As a result, the writing of the improper prescription by Sanders cannot support a § 523(a)(6) claim, even if it were established that Sanders acted as the Debtor's agent.

Accordingly, the Court considers only the Debtor's conduct for purposes of the Plaintiff's § 523(a)(6) claim.

### 2.    The Record Does Not Support a Finding that the Debtor's Conduct was Substantially Certain to Result in Plaintiff's Injury or was Otherwise Willful.

Focusing only on the allegations surrounding the actions or inactions of the Debtor, the Court finds no suggestion in the record that the Debtor acted with any intent (willfulness) to injure Plaintiff.  Plaintiff, however, argues that the willfulness element of § 523(a)(6) can be met by a showing that the Debtor's actions

were "substantially certain" to result in injury to Plaintiff.  In support of her claim, Plaintiff cites to *Smith v. Assevero (In re Assevero)*, 185 B.R. 951, 956 (Bankr. N.D. Ga. 1995).

In *Assevero*, like here, a physician filed bankruptcy while a medical malpractice claim was pending against him.  The plaintiff, a former patient, filed an adversary proceeding seeking a determination that the physician-debtor's inadequate treatment was willful and malicious and thus that the resulting debt was nondischargeable.  On the plaintiff-patient's motion for summary judgment, the court held that "a 'willful and malicious injury' has not been established unless it is shown that [the debtor] intended to cause her injury, or knew that such injury was substantially certain to result from his conduct."  185 B.R. at 955.  The court denied summary judgment, holding that the plaintiff-patient had failed to show the nonexistence of a genuine issue of material fact as to the Debtor's necessary state of mind or awareness in relation to the substantial certainty of the patient's injuries, and holding that the debtor did not overcome the inferences in the record of the debtor's intent or knowledge of substantial certainty.  *Id.* at 958.

Unlike *Assevero*, the Debtor did not personally render treatment to Plaintiff[5]; thus the Plaintiff argues that the Debtor's failure to train and supervise, as well as her lack of awareness regarding Sanders' competence in prescribing the drugs which the Debtor authorized Sanders to prescribe, meet the "substantially certain" test for willfulness.  Plaintiff argues that the Court should infer that the Debtor knew that her conduct was substantially certain to result in injury to Plaintiff

---

[5]       *Assevero* does not directly support Plaintiff's request for denial of the Debtor's motion for summary judgment because in that case it was the debtor who performed the medical treatment of which the patient complained.  Therefore, it was possible for the record to lend itself to inferences of whether the debtor had intent or knowledge that the patient's injuries were substantially certain to result from the debtor's conduct.  Here, on the other hand, the Debtor did not personally treat Plaintiff, and was not even aware that Sanders was treating Plaintiff until after the injuries occurred.  There are no inferences as to the Debtor's willfulness under these facts.

because she knew that lamotrigine could cause severe injury if improperly prescribed, but nevertheless authorized and continued to allow Sanders to prescribe lamotrigine to patients despite the Debtor's having (1) no knowledge of Sanders' general competency as a nurse, (2) no knowledge of Sanders' training or experience in prescribing lamotrigine, (3) failed to train Sanders to correctly prescribe lamotrigine, (4) failed to monitor prescriptions written by Sanders, (5) failed to supervise the treatment Sanders gave to patients, and (6) learned that nurses practicing under her authorization were writing prescriptions with which she did not agree.[6]

Although the *Assevero* court used a subjective test for assessing whether conduct is "substantially certain" to result in injury, the Eleventh Circuit has noted that courts differ on whether to apply an objective or subjective standard when assessing "substantial certainty."  *See Kane v. Stewart Tilghman Fox & Bianchi PA (In re Kane)*, 755 F.3d, 1285, 1293 (11th Cir. 2014) (recognizing disagreement about "whether the term 'substantial certainty' is subjective standard, requiring a creditor to prove that a debtor actually knew that the act was substantially certain to injure the creditor, or an objective standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury.").[7]

Regardless which test—subjective or objective—is applied, however, this record cannot support a finding that the Debtor's conduct was substantially certain to result in Plaintiff's injury.  First, under the subjective standard the record must

---

[6]    Nothing in the record suggests that, prior to Plaintiff's injuries, the Debtor was aware of any improper drug prescriptions written by Sanders.

[7]    Post-*Geiger* cases suggest a trend that courts consider *Geiger* to have neutralized the objective "substantially certain" standard.  *See, e.g., Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002) (holding that subjective standard is appropriate); *Henderson v. Wooley (In re Wooley)*, 288 B.R. 294, 302 (Bankr. S.D. Ga. 2001) (expressing doubt as to whether objective test remains); *see also* Restatement (Second) of Torts § 8A (1965) ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or *that he believes* that the consequences are substantially certain to result from it.") (emphasis added).

14

show that the Debtor had actual knowledge that her conduct was substantially certain to injure Plaintiff. Under this standard, the claim fails. There is no evidence in the record indicating that the Debtor knew that, in signing the Protocol Agreement (authorizing Sanders to prescribe lamotrigine) or in failing to supervise Sanders, she was substantially certain that Plaintiff would be injured. The record does not support the argument that the Debtor "knew that the resulting consequences were certain and, nonetheless, proceeded with the act in question." *In re Assevero*, 185 B.R. at 957 n.7. Knowledge of lamotrigine's danger if improperly prescribed is a far cry from substantial certainty that a failure to adequately supervise and train a licensed professional nurse practitioner would result in the injury to Plaintiff.[8] "Merely knowing that . . . harm might result is not the degree of culpability which supports a determination of nondischargeability under Section 523(a)(6)." *Walters v. Betts (In re Betts)*, 174 B.R. 636, 650 (Bankr. N.D. Ga. 1994).

Similarly, the objective standard of substantial certainty is not satisfied on this record. Despite the Plaintiff's assertion, substantial certainty entails more than merely showing that an injury was foreseeable. The Eleventh Circuit has declined to find an injury "substantially certain" to result from a debtor's conduct where there is not "an unbroken chain of events leading from [the debtor's] intentional act to [the plaintiff's] physical injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995). Other courts have followed suit. *See, e.g., Baker v. Wentland (In re Wentland)*, 410 B.R. 585, 601 (Bankr. N.D. Ohio 2009)

---

[8]    *See* O.C.G.A. § 43-26-3(1.1) (referenced by O.C.G.A. § 43-34-25(1)):

> Advanced practice registered nurse means a registered professional nurse who is licensed by the board under this article or who holds a multistate license under Article 4 of this chapter, who is recognized by the board as having met the requirements established by the board to engage in advanced nursing practice, and who holds a master's degree or other graduate degree from an approved nursing education program and national board certification in his or her area of specialty, or a person who was recognized as an advanced practice registered nurse by the board on or before June 30, 2006 . . . .

("[F]oreseeability does not equate with substantial certainty."); *Blair v. Boughter (In re Boughter)*, 297 B.R. 916, 921 (Bankr. S.D. Ga. 2003) ("If a plaintiff shows that there appears to be an unbroken chain of events leading from an intentional act to an injury and asserts facts showing that a debtor intended for that harm to occur, then that debtor may not prevail in a summary judgment motion regarding dischargeability under § 523(a)(6)." (citing *In re Walker*, 48 F.3d 1161, 1165); *Woolner v. LaFevor (In re LaFevor)*, No. 05-83912, Adv. No. 06-6167, 2007 WL 7136476 (Bankr. N.D. Ga. Jan. 11, 2007) (section 523(a)(6) claim failed due to intervening act between debtor's action and ultimate injury); *Broussard v. Fields (In re Fields)*, 203 B.R. 401, 411 (Bankr. M.D. La. 1996) (foreseeability of injury not sufficient to sustain § 523(a)(6) claim); *see also Morris v. Brown (In re Brown)*, 489 Fed. Appx. 890, 891 (6th Cir. 2012) (where Sixth Circuit upheld bankruptcy court's granting of summary judgment against § 523(a)(6) claim premised on defendant's failure to follow contractual, statutory, and common sense duties in relation to timber operation, on grounds that substantial certainty requires more than foreseeability).

Even a debtor's knowledge of a strong probability of harm—a finding or inference not supported by this record—is insufficient. *Armstrong v. Oslin (In re Oslin)*, 584 B.R. 363, 372 (Bankr. N.D. Okla. 2018) (". . . knowledge of a strong probability that someone might be harmed is not enough" under § 523(a)(6)). Likewise, establishing that the conduct proximately caused the injury fails to satisfy the objective standard for substantial certainty. *See Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 Fed. App'x. 342, 346 (5th Cir. 2010) (jury's finding that injuries were proximately caused by debtor's conduct does not equate to finding of substantial certainty). In *Assevero*, the case championed by Plaintiff, Judge Brizendine held that "[f]oreseeability or merely knowing that harm might result is

Case 17-05057    Doc 37    Filed 08/13/19    Entered 08/13/19 17:25:15    Desc Main
Document    Page 17 of 24

not the degree of culpability which supports a determination of nondischargeability under Section 523(a)(6)." *In re Assevero*, 185 B.R. at 956.

Applying the standard set forth by these cases, the Court is unable to find that Plaintiff's injury was substantially certain to occur as a result of any failure of the Debtor to supervise or otherwise ensure that Sanders was adequately trained to write prescriptions for lamotrigine. The subsequent intervening events—including the conduct of Sanders, which did not necessarily result from the Debtor's failure to supervise—between the conduct alleged of the Debtor, and the actual injury to Plaintiff, preclude a finding of substantial certainty.

To successfully resist summary judgment, Plaintiff must present some affirmative evidence supporting her position. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir. 1995) ("A moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff has not met her burden as to this issue.

### 3.   The Debtor's Conduct Does Not Amount to More than Recklessness.

The Supreme Court has made clear, in a medical malpractice context, that reckless conduct is not sufficient to constitute a § 523(a)(6) claim. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."). Furthermore, a bankruptcy court in our Circuit has recently held that:

> [R]eckless conduct resulting in an injury that evidences an entire want of care or conscious indifference to the consequences is not sufficient under the legal standard established in this exception to discharge. Stated differently, Section 523(a)(6) addresses only those situations in which a debtor desired the injury caused by his conduct. It does not reach a debtor's failure to meet a duty of care that results in injury to someone else.

17

*Loucks v. Smith (In re Smith)*, 537 B.R. 1, 13 (Bankr. M.D. Ala. 2015) (citing *Bracciodieta v. Raccuglia (In re Raccuglia)*, 464 B.R. 477, 483 (Bankr. N.D. Ga. 2011) (emphasis added)); *see also Dearmas v. Gibbs (In re Gibbs)*, No. 05-20436, Adv. No. 05-2039, 2006 WL 6885805, at *3 (Bankr. S.D. Ga. Jan. 18, 2006) ("Even if Debtor intentionally or knowingly failed to perform duties in compliance with a particular standard of care, Section 523(a)(6) cannot apply in this case because Plaintiff has not demonstrated that Debtor intentionally or knowingly acted to cause her injury." (citation omitted)).

Considered in a light most favorable to Plaintiff, the evidence demonstrates, at best, only the Debtor's recklessness. The record contains no indication of willful conduct taken by the Debtor toward Plaintiff. Plaintiff cannot escape the conclusion that her claim for willful and malicious injury, no matter how articulated, is at its core a claim for negligent or reckless failure to meet the appropriate standard of care. *See In re Walker*, 48 F.3d at 1165 ("[T]his type of 'injury' is nothing more than a recasting of the 'reckless disregard' standard expressly rejected by Congress and by this court."). Indeed, in *Walker*, the Eleventh Circuit found that, although the failure to maintain workers compensation insurance required by statute may subject a debtor to criminal penalties, such a failure amounts only to, at most, reckless conduct. *Id.* at 1165. Here, Plaintiff alleges that the Debtor violated contractual duties and Georgia regulations or statutes.[9] Following the reasoning of *Walker*, Plaintiff's argument fails as a matter of law.

Because the issue of willfulness is dispositive as to the Debtor's Motion, the Court need not consider whether the Debtor's conduct was malicious.

---

[9]      Moreover, even if Plaintiff had been a party to the Protocol Agreement between the Debtor and Sanders, which she of course was not, a knowing breach of contract is not within the ambit of § 523(a)(6). *Navy Fed. Credit Union v. Purse (In re Purse)*, 537 B.R. 28, 39 (Bankr. S.D. Ga. 2015) ("A debt arising from a knowing breach of contract is not the type of debt excepted from discharge under 11 U.S.C. § 523(a)(6)" (citing *Kawaauhau v. Geiger*, 523 U.S. at 62)).

For these reasons, summary judgment should be granted in Debtor's favor as to the § 523(a)(6) claim.

### D. § 523(a)(2)(A)—Fraudulent Misrepresentation.

To prevail under § 523(a)(2)(A), Plaintiff must prove

> that the Debtor obtained money, property or credit from the Plaintiff[]: (1) by false representation, pretense, or fraud; (2) knowingly made or committed; (3) with the intent to deceive or to induce acting on same; (4) upon which the Plaintiff[] actually and justifiably relied; and (5) from which the Plaintiff[] suffered damages, injury or loss as a proximate result.

*Washington v. Robinson-Vinegar (In re Robinson-Vinegar)*, 561 B.R. 562, 566 (Bankr. N.D. Ga. 2016) (citations omitted).

As to the types of fraud referenced in the statute: "A false representation is an 'express misrepresentation.' 'False pretense involves an implied misrepresentation or conduct intended to create and foster a false impression.'" *Navy Fed. Credit Union v. Purse (In re Purse)*, 537 B.R. 28, 32 (Bankr. S.D. Ga. 2015) (citations omitted). "Actual fraud requires showings that the defendant made a false or misleading representation with the intent to induce reliance and that the plaintiff detrimentally relied on the representation." *SunTrust Bank v. Brandon (In re Brandon)*, 297 B.R. 308, 313 (Bankr. S.D. Ga. 2002). "Legal or constructive fraud, which involves an act contrary to a legal or equitable duty that has a tendency to deceive, yet not originating in an actual deceitful design, is insufficient." *Bracciodieta v. Raccuglia (In re Raccuglia)*, 464 B.R. 477, 485 (Bankr. N.D. Ga. 2011).

The misrepresentation of a medical professional's credentials may give rise to a nondischargeable debt under § 523(a)(2)(A). *See Hanft v. Church (In re Hanft)*, 315 B.R. 617, 621 (S.D. Fla. 2002); *Abrahamson v. Doyan (In re Doyan)*, 204 B.R. 250 (Bankr. S.D. Fla. 1996).

The assessment of Plaintiff's § 523(a)(2)(A) claim differs significantly from the assessment of Plaintiff's § 523(a)(6) claim. First, "[u]nder § 523(a)(2)(A), the disqualifying act does not have to be committed *by the debtor*." *In re Placeres*, 578 B.R. at 517 (emphasis in original). In other words, vicarious liability can support a § 523(a)(2)(A) claim. *Lioce v. Heinz (In re Heinz)*, 501 B.R. 746, 760 (Bankr. N.D. Ala. 2013, as amended Nov. 13, 2013) ("The Eleventh Circuit has recognized that a debt may be excepted from discharge either when the debtor personally commits actual fraud or when such actual fraud is imputed to the debtor under agency principles." (citing *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148 (11th Cir. 2001)).

Additionally, unlike § 523(a)(6), recklessness may be sufficient to support a non-dischargeability claim under § 523(a)(2)(A). "Reckless disregard for the truth or falsity of a statement can also supply the necessary basis for a determination of non-dischargeability [under § 523(a)(2)(A)]." *In re Purse*, 537 B.R. at 36 (citations omitted).

Considering the evidentiary inferences favorably toward Plaintiff as the non-moving party, the Court concludes that several questions of material fact exist as to Plaintiff's § 523(a)(2)(A) claim. Therefore, the Court must deny summary judgment to the Debtor as to Count II of Plaintiff's Complaint.

### 1. Agency

Plaintiff alleges that Sanders fraudulently represented herself as a doctor to Plaintiff, and that Plaintiff justifiably relied on this representation to her detriment, stating that she would not have taken lamotrigine prescribed by a nurse practitioner and would have asked to speak to a doctor. Plaintiff alleges that Sanders' representing herself as a doctor denied Plaintiff the opportunity to consult or receive treatment from a doctor, to her detriment.

The record is not dispositive as to whether agency exists between the Debtor and Sanders. Thus, whether Sanders acted as an agent of the Debtor when she represented herself as a doctor is a genuine issue of material fact.

Agency is defined under the Georgia Code, which provides that "[t]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1. Georgia courts have explained:

> "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." The existence of agency and the extent of the agent's authority are questions of fact. "A claim of agency may be proved, as any other fact, by circumstantial evidence. The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties. Direct evidence of an agency relationship is not required."

*S. Exposition Mgmt. Co. v. Genmar Indus., Inc.*, 250 Ga. App. 702, 704-05, 551 S.E.2d 830, 832 (2001) (citations omitted); *see also Nissan Motor Acceptance Corp. v. Stovall Nissan, Inc.*, 224 Ga. App. 295, 298, 480 S.E.2d 322, 325 (1997) (affirming denial of summary judgment due to genuine issue of material fact as to agency).

"Bare assertions or denials of the existence of an agency relationship are admissible as statements of fact only when made by one of the purported parties to the relationship." *Chakales v. Hertz Corp.*, 825 F. Supp. 312, 314 (N.D. Ga. 1993). A bare allegation of the existence of agency by a non-party to the alleged agent-principal relationship is "merely an unsupported conclusion of law;" however, if there is competent evidence of agency beyond the non-party's allegation, the existence of agency should be determined at trial rather than on summary judgment. *Id.* (citations omitted).

21

Here, the Debtor, the alleged principal, denies an agency relationship with
Sanders.  Plaintiff, a non-party to the relationship, asserts that such an agency
relationship existed.  Neither the Debtor nor Plaintiff cites to any testimony of the
alleged agent, Sanders, regarding the existence of the alleged principal-agent
relationship.

The Court finds that competent evidence of the relationship exists beyond
Plaintiff's allegation.  Under the terms of the Protocol Agreement, the Debtor
delegated to Sanders authority to write lamotrigine prescriptions.  *See also*
O.C.G.A. § 43-34-25(a)(10) (defining "Nurse protocol agreement" as one in which
physician *delegates* to nurse practitioner authority to perform certain acts).  The
Protocol Agreement also assigns the Debtor responsibility to supervise and train
Sanders.  Further, under Georgia Rules and Regulations, "the delegating physician
is responsible for all the medical acts performed by the [nurse practitioner]." Ga.
Comp. R. & Regs. 360-32-.05(4).  These contractual and regulatory provisions leave
open the implication that an agency relationship may exist.

Although the Debtor denies that Sanders is her agent, the Court finds, in
resolving doubts against the Debtor, that the facts presented create a genuine issue
of material fact as to whether Sanders acted as the Debtor's agent.

### 2. Vicarious Liability

As noted previously, vicarious liability applies in the context of a
§ 523(a)(2)(A) claim.  Plaintiff testified that Sanders introduced herself as "doctor"
and that Plaintiff relied on this representation.  The parties dispute whether
Sanders qualified her introduction as doctor to reference her doctorate nursing
degree and whether Sanders explained her role as a nurse practitioner or advanced
practice registered nurse.  Thus, when construed in Plaintiff's favor the record
reveals questions of material fact regarding Sanders' conduct (if imputed to the

Debtor) and the Plaintiff's subsequent reliance on such conduct.  Consequently, summary judgment is inappropriate.

### 3.  Debtor's Receipt of Money or Property on Account of Fraud

The Debtor argues that she is entitled to summary judgment because Plaintiff cannot show that the Debtor personally received money, property, services, or an extension of credit as outlined in § 523(a)(2)(A).  To support this assertion, the Debtor cites to *Kernozek v. Rubenstein (In re Rubenstein)*, 101 B.R. 769 (Bankr. M.D. Fla. 1989).  To the extent that *Rubenstein* stands for the proposition advanced by the Debtor, that proposition is not an accurate statement of the law in this Circuit.  The Eleventh Circuit applies the "receipt of benefits" theory for § 523(a)(2)(A), which requires only that the debtor benefit in some way from funds paid by the creditor on account of the fraud. *HSSM #7 Ltd. P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 890 (11th Cir. 1996).[10]  Such benefit to the debtor may be indirect.  *Kondapalli v. DeMasi*, 551 B.R. 653, 660 (M.D. Fla. 2016).

Because it is undisputed that Plaintiff paid for at least a portion of her treatment at River Edge, there exists a question of material fact as to whether the Debtor, as an employee receiving regular compensation from River Edge, benefited from the alleged fraudulent conduct.

### 4.  Plaintiff's Allegations are Pled with Sufficient Particularity.

The Debtor argues that Plaintiff's Complaint fails to contain sufficient particularity as to the fraud allegations as required by Rule 9(b), as incorporated by Bankruptcy Rule 7009.  However, this argument, centered on the lack of Plaintiff's specific allegations of the fraudulent acts by the Debtor, overlooks Plaintiff's specific

---

[10]　In adopting the "receipt of benefits" theory, the Eleventh Circuit Court of Appeals affirmed a district court's reversal of a bankruptcy court's decision authored by the judge who decided *In re Rubenstein*.

allegations of Sanders' conduct, whose acts might be attributable to the Debtor under the principle of vicarious liability.

The Complaint contains detailed allegations as to the conduct and misrepresentations of Sanders. The Court finds the allegations sufficient to pass muster under Rule 9(b), particularly under the "liberal approach to fraud pleading" in the context of § 523(a)(2)(A). *See Williams v. Carson (In re Carson)*, No. 06-68324, Adv. No. 07-9050, 2008 WL 7842099, at *1 (Bankr. N.D. Ga. Mar. 27, 2008).

## III.    Conclusion.

For the foregoing reasons, the Court finds that the Debtor is entitled to judgment in her favor as to Count I of Plaintiff's Complaint brought under § 523(a)(6), and that the Debtor is not entitled judgment in her favor as to Count II of Plaintiff's Complaint, brought under § 523(a)(2)(A). The Court will enter an Order in accordance with this Opinion granting in part and denying in part the Debtor's Motion for Summary Judgment.

[END OF DOCUMENT]